IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


```
* * * * * * * * * * * * *   CRIMINAL ACTION
UNITED STATES OF AMERICA  *  14-121ML
                          *
VS.                       *  OCTOBER 20, 2015
                          *
KEMONT BOWIE              *  PROVIDENCE, RI
* * * * * * * * * * * * *
```


HEARD BEFORE THE HONORABLE MARY M. LISI

SENIOR JUDGE

(Sentencing)


**APPEARANCES**:

FOR THE GOVERNMENT:          ADI GOLDSTEIN, AUSA
                             U.S. Attorney's Office
                             50 Kennedy Plaza
                             Providence, RI  02903

FOR THE DEFENDANT:           OLIN THOMPSON, ESQ.
                             Federal Defender's Office
                             10 Weybosset Street
                             Suite 300
                             Providence, RI  02903


Court Reporter:              Anne M. Clayton, RPR
                             One Exchange Terrace
                             Providence, RI  02903


Proceeding reported and produced by computer-aided
stenography

1    20 OCTOBER 2015 -- 9:50 A.M.

2         THE COURT:  This is the matter of the United

3    States versus Kemont Bowie.  The matter is before the

4    Court this morning for imposition of sentence.

5         Before we begin, I'd like to see counsel briefly

6    at the bench, please.

7         (Bench conference off the record.)

8         THE COURT:  The Court is in receipt of the

9    presentence report prepared by the Probation Office.

10   The probation officer has conducted a guidelines

11   analysis for Mr. Bowie and has determined that he has a

12   criminal history category of 6 with a total offense

13   level of 29, which provides for a guideline range of

14   151 to 188 months of incarceration as to Counts II and

15   III.  As to Count V, it's a restricted range of 60

16   months.

17        In addition to the presentence report, I have

18   the Defendant's motion for sentencing consideration.

19        I did not see any objections filed to the

20   presentence report, Mr. Thompson, so I take it that you

21   are in agreement with the guideline calculation.

22        MR. THOMPSON:  Your Honor, yes and no.  The

23   original presentence report, which I believe was filed

24   on August 13th --

25        THE COURT:  I'm looking at one from September

1    9th.

2         MR. THOMPSON:  For some reason, your Honor,

3    there was an issue and it may still be, I believe it

4    is, because the Government had the same issue, that

5    that did not appear on ECF.  And for that reason

6    neither I or the Government actually looked at the

7    second copy until the last several days.

8         THE COURT:  Document number 58 filed September

9    9th.

10        MR. THOMPSON:  Right.  It doesn't appear on the

11   docket that either of us can see, your Honor; and for

12   that reason, neither of us actually -- this doesn't

13   affect the guideline range.

14        THE COURT:  I think if I'm understanding you

15   correctly that what may have happened was that when it

16   was filed by Probation, they may have hit the wrong

17   button.

18        MR. THOMPSON:  I think that's possible.  For

19   that reason -- and what I'm referring to in the copy

20   that you have in front of you, the September 9th, and I

21   always note this because you said at the end there

22   Count V carries a five-year maximum.  Under this case,

23   Count V is going to be dismissed.  I think that portion

24   of the -- and that did not appear in the first

25   presentence report that we had from August 13th.  As

1   part of the plea agreement, the Government is

2   dismissing that.

3            MS. GOLDSTEIN:  Your Honor, if I may --

4            THE COURT:  I don't have that in the plea

5   agreement.  Count I, II -- he's pleading -- just a

6   second.  Maybe you're right.  Counts IV and V are being

7   dismissed.

8            MR. THOMPSON:  Correct, your Honor.

9            And the outcome of that, your Honor, is that in

10  the presentence report you have from September 9th,

11  paragraphs 33 through 42 address a second grouping of

12  counts, but that actually -- that grouping only

13  pertains to Count V so that should -- that doesn't

14  change the final guideline but --

15           THE COURT:  It's irrelevant.

16           MR. THOMPSON:  -- it's irrelevant.  The

17  Government and I are in agreement that everything else

18  in the PSR is correct and the one from August 13th was

19  correct.

20           THE COURT:  When you couldn't look at it, did

21  you call Probation?

22           MR. THOMPSON:  I'm not sure how actually I got

23  it, your Honor.  It's not on the docket, but I have it.

24           THE COURT:  Okay.  I'm going to ask Probation to

25  amend the presentence report to accurately reflect

1    what's contained in the plea agreement, which is that

2    the Government today will be moving to dismiss Counts

3    IV and V and, therefore, paragraphs 34 through I think

4    it's 39 --

5           MR. THOMPSON:  It would be 33 through 42, your

6    Honor.

7           THE COURT:  33 through --

8           MR. THOMPSON:  42.  That would leave the offense

9    level on paragraph 32 is at 32 and then we get the --

10          THE COURT:  Right.

11          MR. THOMPSON:  Down to 29.

12          THE COURT:  So would you prepare an amended PSR

13   that eliminates paragraphs 33 through 42 because

14   they're not relevant.

15          And as you say, the total offense level and

16   criminal history score remain the same.

17          MR. THOMPSON:  That's correct.

18          THE COURT:  And the guideline range then is 151

19   to 188.

20          MR. THOMPSON:  We agree, Judge.

21          MS. GOLDSTEIN:  That's correct, your Honor.

22          THE COURT:  However, I think I said with respect

23   to Count I, the range is restricted at 60 --

24          MR. THOMPSON:  Yes, your Honor.

25          THE COURT:  -- which is correct.

1         Other than that objection, Mr. Thompson, do you

2    have any others to the presentence report?

3         MR. THOMPSON:  No, thank you, your Honor.

4         THE COURT:  Okay.  I'll hear from the

5    Government, then, on sentence.

6         MS. GOLDSTEIN:  Your Honor, Defendant pleaded

7    guilty to conspiracy to traffic a minor female and an

8    adult female in violation of 18 United States Code

9    Section 371.  He pleaded guilty to sex trafficking of a

10   minor in violation of 18 United States Code Section

11   1591(a)(1) and (b)(1)(2), and he pleaded guilty to

12   transportation of a minor for sexual activity in

13   violation of 18 United States Code Section 2423(a) and

14   (2).

15        As the Court is aware, the Defendant is facing a

16   mandatory minimum term of incarceration of ten years on

17   Counts II and III; and as the Court has just noted, his

18   guidelines range is 151 to 188 months.

19        On August 7th, 2015, this Court sentenced

20   Co-Defendant Ricky Wallace to 144 months for the same

21   offense.  That sentence was within that Co-Defendant's

22   guidelines range.

23        Wallace's offense level was the same as

24   Defendant Bowie's, however, his criminal history

25   category was a one level lower.

1    Today the Government asks the Court to impose a

2    sentence of 156 months on Mr. Bowie.  That is 13 years,

3    a sentence that is within the guideline range.  That

4    sentence is reasonable and called for in this case in

5    light of the nature and circumstances of the offense

6    and the history and characteristics of this Defendant.

7    The facts of the case are appalling.  Defendant

8    and Co-Defendant, Ricky Wallace, conspired to lure

9    young women, vulnerable, run-aways, homeless from South

10   Station in Boston to Providence, Rhode Island for

11   purposes of prostitution.

12   The Defendant had already been prostituting

13   Raechyl Spooner for months.  He beat her.  He took over

14   her apartment where she was residing with her young

15   daughter, and he made her into a co-conspirator in this

16   enterprise by getting her to drive these two women from

17   Boston to Rhode Island and then teach the young victim,

18   a 17-year-old girl, the ropes by taking her on walks to

19   pick up johns, by taking her photograph and posting her

20   on Backpage, by having her watch how it was done and

21   then by doing it herself.

22   The Defendant, as was his Co-Defendant, Ricky

23   Wallace, they're predators.  Simple as that.  Instead

24   of going out to work -- this is a 35-year-old man, six

25   feet tall, 250 pounds.  He could roll up sleeves, sweat

1   himself and make a living.  But why do that when you

2   can just force young women to sell their bodies while

3   you sit in another room and wait for them to hand over

4   the money.

5        They get women to sell their bodies and they

6   reap the rewards.

7        In this case, the first victim, a 17-year-old

8   girl, ran away from a group home in Boston and found

9   herself literally imprisoned for a week, forced to work

10  as a prostitute, selling her body at times for as

11  little as pizza and $20.

12       The second woman, a 22-year-old, reported that

13  she was sexually assaulted by the Co-Defendant, Ricky

14  Wallace, after she refused to work as a prostitute.

15  Both of these young women reached out to law

16  enforcement begging to be rescued.

17       The 17-year-old victim reported that this

18  Defendant, who she was told to refer to as "Daddy,"

19  trained her along with Spooner to become a prostitute.

20  And when Spooner refused to work, she watched this

21  Defendant strike her.  She also observed Wallace strike

22  the 22-year-old victim in her presence.

23       This is violent stuff, and it is consistent with

24  this Defendant's history.

25       Now, the Defendant has argued that his criminal

1  history might be over-representative of his past.  Your

2  Honor, the Government submits that it is not.  It does

3  not paint a pretty picture.  The Court is entitled to

4  consider all of the Defendant's background and

5  characteristics.

6          In addition to the several convictions that are

7  outlined in the PSR for drug trafficking offenses for

8  which he garnered the most points as well as the fact

9  that he committed this offense while on a criminal

10  justice sentence in the State, his criminal history is

11  significant for multiple convictions and arrests,

12  admittedly dismissed cases, for domestic violence one

13  after another.

14          Let me just go back.  April 25th, 2007,

15  conviction for violation of protective order.  August

16  3rd, 2005, domestic violence arrest.  Victim didn't go

17  forward.  It was dismissed.

18          September 4th, 2008, domestic violence arrest.

19  May 25th, 2009, domestic violence arrest.  July 28th,

20  2010, conviction for simple assault, domestic violence

21  case.  February 15th, 2011, another conviction for a

22  domestic violence case.  March 14th, 2011, domestic

23  violence arrest.  September 9th, 2012, domestic

24  violence arrest.

25          The Government recognized that this Defendant

1  had a horrific up-bringing as demonstrated in the

2  sentencing memo and attachment thereto submitted by the

3  Defendant.  We recognize that the Defendant's childhood

4  was tragic, and we recognize the Defendant suffers from

5  mental illness.  While that may explain some of his

6  actions, it simply does not excuse this history of

7  beating women, degrading them, selling them into

8  prostitution.

9       And your Honor, at this point, it stops.  And

10  this Court can send a very strong message both to the

11  Defendant and to the community at large that we are

12  simply not going to stand for individuals like this

13  Defendant preying on vulnerable victims, a minor in

14  this case and another young woman, and selling them,

15  selling their bodies behind closed doors in the City of

16  Providence and elsewhere in this State.

17       The sentence that the Government is asking for

18  today is reasonable.  It falls within the guideline

19  range.  It is proportional to the sentence that this

20  Court imposed on the Co-Defendant in this case, Ricky

21  Wallace.

22       In addition to a sentence of 13 years, this

23  Court is required to impose the $100 special

24  assessment.

25       Your Honor, the Government is also asking the

1    Court to impose a term of supervised release in this

2    case that is life, which is the maximum term of

3    supervised release, with the conditions that this Court

4    deems appropriate, mental health counseling, substance

5    abuse counseling and domestic violence counseling.

6           Thank you, your Honor.

7           THE COURT:  Thank you, Ms. Goldstein.

8           Mr. Thompson, before you begin, I neglected to

9    ask whether you had had an opportunity to review the

10   presentence report with your client.

11          MR. THOMPSON:  Yes, your Honor.  Thank you.  We

12   did.

13          Your Honor, part of the reason that this case

14   took a long time to proceed through the court is

15   because there was a lot of investigation to be done

16   after the initial arrest was made, and a lot of that

17   needed to be done by the Government because they were

18   the ones that had access to the victims to find out

19   what really happened.

20          And part of the reason it took so long is

21   because after that investigation we took the time with

22   the Government to figure out what the facts were and

23   agree on those facts and put them in the plea agreement

24   and put them in the presentence report.

25          What you've heard today from the Government, a

1    lot of it goes well beyond the facts that are in the

2    presentence report, the facts that are in the plea

3    agreement and the facts as they actually occurred.

4         Mr. Bowie -- and so I want to correct some of

5    those before I go into the rest of the sentencing

6    argument because I don't think that this case, as

7    serious as it is, has been fairly portrayed.

8         The Government accused Mr. Bowie of beating his

9    Co-Defendant.  That did not happen and that is not part

10   of the agreed-to facts.  That simply didn't happen.  He

11   is accused of coercing her to become a prostitute.

12   That also did not happen.  He's accused of today

13   photographing one of the victims in this case and

14   putting her on the Internet.  That did not happen.

15   Co-Defendant Wallace did that.  And he's accused of

16   forcing these people, and particularly holding the

17   17-year-old victim in a virtual prison for a week and

18   that did not happen.

19        There was no force and coercion in this case.

20   And there's no doubt that this is an extraordinarily

21   serious case and that the mere power differential

22   between an adult and a 17-year-old is well worth the

23   prison sentence you're going to impose today, but the

24   force and coercion counts were dismissed for a reason,

25   and the facts were agreed upon to leave that out for a

1    reason. It's because it didn't happen.

2         This 17-year-old victim was free to leave at any

3    time. She was provided with a phone, and she

4    acknowledged that upon later investigation. That's

5    important.

6         THE COURT: I want you to stop there and I want

7    counsel to approach.

8         MR. THOMPSON: Yes, your Honor.

9         (Side-bar conference.)

10        THE COURT: We are on the record because this is

11   of concern to me. I know that you were not the

12   original prosecutor on the case; that Ms. Chin struck

13   the deal, and I know that part of that was to extract

14   certain of the language that was in the indictment,

15   which would have triggered the 15-year mandatory

16   minimum sentence.

17        Now, I don't know what happened or didn't

18   happen, but you've alluded to some of it in your

19   presentation and now Mr. Thompson is saying that it

20   didn't happen.

21        MS. GOLDSTEIN: I can respond, your Honor, in

22   open court to Mr. Thompson's comments. When I made my

23   argument, I did not mean to -- and I understand that

24   Mr. Thompson might have understood it this way. I did

25   not mean to suggest that the Defendant's conduct

1    satisfied the force, fraud and coercion as to the

2    victim's elements as the Court has just noted.  We did

3    not prove up those facts beyond a reasonable doubt, and

4    those counts were dismissed and the Defendant is not

5    facing this 15-year mandatory minimum sentence because

6    of that fact.  However, that doesn't mean that the

7    Court can't consider the overall circumstances of the

8    offense even though they may not have risen to the

9    statutory crime of force, fraud and coercion.

10         The fact is, your Honor, this girl made a call

11   to law enforcement hiding down the street from the

12   apartment away from the Defendant and his Co-Defendant.

13   She had to be -- she did not make that call when she

14   was in the apartment.  She ran away and made that call

15   down the street, okay, when she felt that she had a

16   moment to do that.  That is a fact and that has not

17   changed.  And that is not retracted.  She did not feel

18   like she was free to reach out to law enforcement at

19   any time.

20         THE COURT:  That was, as I understand, was with

21   Wallace over in Seekonk and she managed to get away on

22   her own.

23         MS. GOLDSTEIN:  She ran away.

24         THE COURT:  Do you dispute that?

25         MR. THOMPSON:  That factually happened but she

1  also claimed at that point, one, she was actually found

2  back at the house by herself with the phone.

3      MS. GOLDSTEIN:  She managed to get ahold of that

4  phone after it was taken away from her.  She got it

5  back.  She didn't have it in the beginning.

6      THE COURT:  Do you agree that she left the house

7  to make the call?

8      MR. THOMPSON:  No.  She left the house to go

9  running.  She did go running.

10      MS. GOLDSTEIN:  She made the call outside in the

11  woods outside of the house.

12      MR. THOMPSON:  She also claimed that she was

13  kidnapped in Boston and forced by three or four burly

14  men into a car, and videotape proved that that was not,

15  in fact, true.

16      MS. GOLDSTEIN:  And that only goes to an opinion

17  that nothing may have happened.

18      MR. THOMPSON:  I understand that.  My point

19  being what she said when she was calling from the woods

20  in not accurate because she lied she was kidnapped.

21      THE COURT:  The other problem you have is that

22  your client admitted to a conspiracy with Wallace.

23      MR. THOMPSON:  Correct.

24      THE COURT:  Okay.  All right.  I think I have

25  the picture.  Thank you.

1          (End of side-bar conference.)

2          MR. THOMPSON:  Thank you, your Honor.  The last

3    thing I wanted to clarify was that Ms. Goldstein stated

4    that the second victim, I believe, was sexually

5    assaulted and that was by Mr. Wallace, not by --

6          THE COURT:  That's what she said.

7          MR. THOMPSON:  That's what she said.  That it

8    was by Mr. Wallace, right.

9          THE COURT:  She said that.

10         MR. THOMPSON:  Correct, your Honor.  I'm just

11   clarifying in order to get that separation, which I

12   think is important, because these two did not -- I

13   don't believe they are comparative.  My request for

14   sentence for Mr. Bowie, obviously, is two years less

15   than that which you gave to Mr. Wallace.

16         As I've said repeatedly, your Honor, there's no

17   doubt that this is a very serious crime, and there's

18   also no doubt that 10 years or 12 years or more is a

19   very severe and serious punishment.  So I don't think

20   it needs to be pounded into the record how serious it

21   is.  There can be no doubt about it.

22         Mr. Bowie has never done more than 15 months in

23   prison, and he did that on a drug trafficking charge.

24   He's never done more than that.  And in fact, his

25   record is a long one but, as Ms. Goldstein stated, it's

1    primarily driving offenses and even the many domestic

2    charges that she reviewed resulted in only three

3    convictions.

4          THE COURT:  There were also, as I counted them,

5    six convictions for drugs, disorderly conduct and

6    resisting arrest that weren't counted.

7          MR. THOMPSON:  Not counted points-wise, correct,

8    your Honor.

9          THE COURT:  Which means that his score of six is

10   probably just about right.

11         MR. THOMPSON:  Well, I disagree, and you know

12   that from my sentencing memorandum, your Honor.  Out of

13   the 15 points he does get on his criminal history, I

14   put in my memo seven until I realized that the two

15   extra points from Probation were also for being on

16   probation on a suspended license case, no other kind of

17   case.

18         So out of his 15 criminal history points, which

19   would put him squarely in category 6, nine of those are

20   for driving on a suspended license.

21         I certainly acknowledge to the Court that

22   suspended license cases when they are counted can be

23   important to the Court's sentencing calculation.  I

24   think they can reflect on whether someone is willing to

25   abide by an order of the Court.  In a much less serious

1    case where perhaps the Court is looking at sending

2    someone to jail or not to jail or what term of

3    probation to put them under, I think the number of

4    suspended license cases could make a difference.  But

5    when you're looking at a sentence of 10 years or 12

6    years or 13 years, I would suggest that the number of

7    suspended license cases is completely irrelevant to

8    what long sentence is appropriate to punish the

9    Defendant for this crime and to rehabilitate him for

10   this crime and to deter the public and Mr. Bowie

11   specifically for this crime.

12        Those crimes of driving with a suspended license

13   are completely irrelevant and yet they boost his

14   criminal history score from a category 3 to a category

15   6.  And without the suspended license cases, he would

16   be at a range of 108 to 135 months.

17        THE COURT:  120 to 135.  It's restricted.

18        MR. THOMPSON:  Fair enough, your Honor.  120 to

19   135.  That's exactly right.  In any event, squarely on

20   the line of the mandatory minimum sentence in this case

21   of 120 months.

22        As opposed to his Co-Defendant, Ricky Wallace,

23   who you gave 12 years to, your Honor, Mr. Bowie is not

24   accused of using violence in this case.  As opposed to

25   Mr. Wallace, Mr. Bowie does not have prior allegations

1    or other pending charges in other courts of sexual

2    assault or sex trafficking. Those two facts, I think,

3    are very mitigating and distinguish Mr. Bowie from

4    Mr. Wallace.

5         Again, those things don't make Mr. Bowie's

6    actions legal in any way, but the violence should not

7    serve as an aggravator in this case. And we need to

8    look at Mr. Bowie himself. As acknowledged by the

9    Government, he suffers from a variety of major mental

10   illnesses and grew up with a really horrific traumatic

11   life. His mother was a drug addict and prostitute.

12   His father was a pimp and a prostitute. He witnessed

13   abuse between them and he suffered abuse from his

14   parents, from the johns that came into the household,

15   and the long-lasting effects of that are obvious both

16   in his mental illness and also, I would argue, in his

17   commission of this crime.

18         It shouldn't be any surprise that someone who

19   grew up in that kind of situation is not able to relate

20   to others in society in a more normal way and is not

21   able to trust people in a more normal way. And just as

22   when we talk about defendants who grew up the children

23   of drug addicts and drug traffickers, they often turn

24   to drug trafficking when they get older especially if

25   they have the kind of trauma and mental illnesses that

1   Mr. Bowie has.

2           Again, not particularly mitigating, but I think

3   it should cause the Court concern of whether a sentence

4   of more than a decade in prison is really necessary to

5   punish this crime and is really necessary to deter

6   Mr. Bowie.  The serious mental illnesses that he

7   suffers from are the kind that were -- attempts were

8   being made to deal with them before his incarceration,

9   but now that he's been incarcerated and is getting the

10  proper medication and therapy, he is doing much better.

11  And with the ten-year sentence at least you have to

12  give him, he will be involved, obviously, with more

13  significant counseling.

14          And as Dr. Parsons points out, perhaps the most

15  important thing for Mr. Bowie is that he remains on a

16  closely-monitored medication regimen but also that he

17  get counseling.  One of the things I'm going to be

18  requesting in the sentencing, your Honor, is that you

19  recommend he go to the BOP prison at Fort Devens.  And

20  the reason for that is multi-fold.  One, it is local so

21  he'll be able to continue to see his children.  They've

22  been almost his only support, his family and friends

23  and his children since he's been locked up.

24          Two, Fort Devens is known for its psychiatric

25  care, and he clearly needs a lot of psychiatric care

1    and monitoring.

2        And three, Fort Devens is the place where most

3    sex offenders from this territory go, and he clearly

4    needs some counseling to deal with that as well.  I

5    don't think particularly because he's what we consider

6    a normal sex offender and has criminal sexual

7    inclinations, but I think more because he grew up in

8    that kind of environment witnessing those kinds of

9    sexual politics and abuse and that kind of thing, and

10   he needs help dealing with that so that when he gets

11   out he doesn't see things as much that way.  And I know

12   that's something he's learned about while he's been in

13   prison, seeing how seriously the Federal Government

14   takes these cases, seeing more and more people getting

15   arrested for these crimes and seeing the five and ten

16   and even 15-year mandatory minimum sentences being

17   dished out, that's had an impact on him and how he

18   thinks about this.

19       So I think it's very important that he does go

20   to Fort Devens, but I think overall, and this is what I

21   wrote in my sentencing memorandum, your Honor, ten

22   years is just a very, very long time in prison.  It's a

23   very serious punishment, and I'm not sure that any

24   higher punishment really satisfies any factors of

25   sentencing other than the Government or society getting

1    its pound of flesh as opposed to recognizing you

2    committed a really serious crime, a horrible crime that

3    you need serious punishment for.  But at the same time,

4    you grew up in a horrific environment.  You have

5    long-lasting mental health effects and you need help if

6    you're going to survive once you get out.

7         So is that additional one or two or three years

8    really going to get anybody anything other than the

9    pound of flesh?  I'd suggest that ten years is enough

10   punishment.  Nothing more than that is necessary for

11   those other factors.

12        Thank you, your Honor.

13        THE COURT:  Thank you, Mr. Thompson.

14        Mr. Bowie, is there anything you want to say on

15   your own behalf?

16        THE DEFENDANT:  I just want to start by saying

17   I'm sorry.  And due to the stipulations that I'm being

18   brought up on, I always thought that that was normal,

19   the way I grew up; and since I've been incarcerated and

20   I've been around a few gentlemen that have been

21   prosecuted on the same crime as I, I realize how big of

22   a deal it really is.  And I just want to say I'm sorry.

23   I'm embarrassed, and I'm very disappointed in myself.

24   And that's it, your Honor.

25        THE COURT:  The Defendant here has requested a

1    sentence that is the mandatory minimum sentence.

2    Mr. Thompson has argued very earnestly on behalf of his

3    client as he is required to do; however, there are some

4    points with Mr. Thompson's presentation with which I

5    disagree.

6         The Defendant's criminal history score in this

7    case is at a category 6.  That's taking into account

8    all of the countable convictions, many of which, and

9    he's correct, stem from driving offenses.  He has 15

10   criminal history points by virtue of all of the

11   countable offenses.  Criminal history category 6 is 13

12   and up so he's edging toward a category 7, if there

13   were such a thing.

14        But where I depart from Mr. Thompson's analysis

15   of the propriety of that category 6 score is the fact

16   that there were so many convictions dating back to 1998

17   that were not countable, and those were serious

18   offenses as well.

19        In 1998, there was a conviction for possession

20   of crack, and it appears at least from the description

21   in the presentence report that the Defendant was

22   dealing.  He was placed on probation and ordered into

23   substance abuse counseling.

24        Then in 1999, there's another drug offense.  He

25   violated on that, didn't appear.

1          Then we fast-forward to 2009, and there is a

2     disorderly conduct -- this is at paragraph 66 -- and

3     obstructing a police officer.  That wasn't counted.

4          In 2010, there's a simple assault.  That was

5     dismissed but the disorderly conduct domestic, he

6     received a six-month suspended sentence on that one.

7     That wasn't counted.

8          In 2011, there's another disorderly conduct

9     domestic that wasn't counted.  Later in 2011, a

10    resisting arrest, a one-year suspended sentence.  That

11    wasn't counted.

12         So those drug and assaultive convictions were

13    not counted.  And so even if, as Mr. Thompson has

14    argued, the criminal history score is inflated by

15    virtue of the many, many driving offenses, even if we

16    were to take those out and consider this record, some

17    of these might have counted.  Maybe not, but I can't

18    close my eyes to the fact that Mr. Bowie has had an

19    almost unbroken string of criminal offenses dating back

20    to his teenage years.

21         I also do not close my eyes to the very tragic

22    circumstances of his own up-bringing.  This is not an

23    uncommon situation of people who grow up as Mr. Bowie

24    did, find themselves in a world without having had the

25    benefit of any parental guidance and it is not uncommon

1    for them to act out.

2           What distinguishes this case, however, from many

3    of the cases over which I've presided over the many

4    years I've been on this Court is that this is a case

5    involving predatory conduct and victimization of

6    vulnerable people.  Making money not by dealing drugs.

7    That's almost understandable given Mr. Bowie's

8    up-bringing and life circumstances.  But victimizing

9    young women, one of these young women was a juvenile,

10   for no reason other than to make money is so

11   fundamentally wrong that even given Mr. Bowie's tragic

12   circumstances of his early life, his documented now

13   mental illness, leads me to the conclusion that he is a

14   danger to society.

15          If he was willing along with Mr. Wallace to

16   engage in the conduct that he has admitted all just for

17   the almighty dollar when he himself could have gone out

18   and gotten a job -- and frankly, if he had been here

19   saying my job is being a drug dealer, I'd have more

20   sympathy.

21          What I cannot countenance, and that's what I

22   would be doing by exceeding to the request of a

23   mandatory minimum sentence, is to say, well, we can

24   excuse all of that because of his up-bringing and his

25   mental health issues.  As I say, the victimization of

1    another human being as was done in this case, not once

2    but twice, is so fundamentally wrong that anyone who

3    engages in it has to be viewed as a threat, a predator

4    and someone who has to be shut away for a long period

5    of time in order to keep the other young women out

6    there who may fall prey to that conduct safe.

7            Mr. Bowie now says he's sorry.

8            I certainly hope so because what you did to

9    those two young women, Mr. Bowie, cannot be erased and

10   it's something that they will have to live with for the

11   rest of their lives.  I sincerely hope that they are

12   getting treatment and counseling that they will need in

13   order for them to have some semblance of a normal life.

14           The guidelines in this case, I think, get it

15   just about right.  This is a heinous crime.

16   Thankfully, it is not one that I've seen a lot,

17   although from what I read in the newspapers, this isn't

18   the only case percolating out there where young men

19   like Mr. Bowie and Mr. Wallace rather than getting

20   themselves a real job go out and decide to victimize

21   women.

22           And so the sentence that I think most

23   appropriately reflects the Court's concerns as

24   expressed here today, that is the need to protect the

25   public from further conduct of this nature, the need to

1   punish this Defendant, the need to deter others who may

2   consider this is a good way to make a quick buck, the

3   need for this Defendant to receive treatment and

4   education so that when he does get out of prison he can

5   be a productive member of society, I think the sentence

6   called for by the Government here is an appropriate

7   sentence.  And so the sentence I impose on Counts I --

8   excuse me, Counts II and III is a term of incarceration

9   of 156 months.  On Count I, a term of 60 months, all to

10  run concurrently with each other.

11         The Defendant will be placed on supervised

12  release for a period of ten years as to Counts II and

13  III.  On Count I, a term of supervised release of three

14  years, all to run concurrently with each other.

15         As special conditions of supervised release, the

16  Defendant shall participate in a program of substance

17  abuse treatment, either in or outpatient, whatever is

18  necessary.

19         The Defendant shall participate in a program of

20  substance abuse testing and submit to up to 72 drug

21  tests per year.  The Defendant shall participate in a

22  program of mental health treatment.  To the extent that

23  the Defendant has the ability to contribute to the

24  costs of his drug testing, drug treatment and mental

25  health treatment, he is ordered to make those

1  contributions.  He is ordered to participate in sex

2  offender specific treatment as directed by the

3  probation officer and to submit to periodic testing in

4  the form of polygraphs or any other methodology

5  approved by the Court in order to measure his

6  compliance with the conditions of treatment and

7  supervised release.

8       Again, to the extent that he may have the

9  ability to contribute to the cost of such treatment and

10  testing, he is ordered to make those contributions.

11       The Defendant shall comply with all applicable

12  federal and state laws regarding the registration of

13  sex offenders in his state of residence, employment and

14  school attendance, and he shall provide verification of

15  compliance to the probation officer.

16       The Defendant shall have no contact with any

17  child under the age of 18 without the presence of an

18  adult who is aware of the Defendant's criminal history

19  and is approved in advance by the probation officer.

20  So that the record is clear, the reason for this

21  condition is that one of the victims of the Defendant's

22  offense was a minor.

23       Finally, the Defendant shall have no contact,

24  whether direct or indirect, with the victims of this

25  offense.

1       I am not imposing any fine in this case since I

2   find that the Defendant does not have the ability to

3   pay a fine since he is indigent and he has minor

4   children and any money he earns while he's incarcerated

5   or on supervised release ought to go to the financial

6   support of his minor children.  I must impose the

7   mandatory special assessment of $100 per count for a

8   total of $300.

9       Mr. Bowie, the sentence I've imposed is within

10  your guideline range.  I'm reminding you that under the

11  terms of your plea agreement you gave up your right to

12  take an appeal from a sentence that is within that

13  range.  Do you understand that?

14       THE DEFENDANT:  Yes.

15       THE COURT:  Mr. Thompson requested specifically

16  Fort Devens.  I do not make specific requests.  I will

17  recommend that the Bureau of Prisons place Mr. Bowie in

18  a facility that is able to provide him with the mental

19  health treatment that he needs and which is documented

20  in the Defendant's sentencing memorandum, that it be

21  near Rhode Island to the extent that that is possible

22  so that he may maintain contact with his family.  And

23  I'll leave live it to you, Mr. Thompson, to work with

24  the Bureau of Prisons administratively to see where it

25  is that he's placed.

1    MS. GOLDSTEIN:  The Government moves to dismiss

2    Counts IV and V of the indictment against the

3    Defendant.

4    THE COURT:  Granted.  IV and V are dismissed.

5    Anything further?

6    MS. GOLDSTEIN:  Nothing from the Government,

7    your Honor.

8    MR. THOMPSON:  No, your Honor.  Thank you.

9    (Adjourned at 10:55 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>C E R T I F I C A T I O N</u>

       I, Anne M. Clayton, RPR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

/s/ Anne M. Clayton

_____

Anne M. Clayton, RPR

April 18, 2016

_____

Date